UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Catherine Burke and
Mikael Rolfhamre

   v.                                        Civil No. 06-cv-317-JD
                                                Opinion No. 2007 DNH 012
Brookline School District


O R D E R

Catherine Burke and Mikael Rolfhamre, who are proceeding pro se, bring suit against the Brookline School District, alleging violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, the Individuals with Disabilities in Education Act ("IDEA"), and the Family Educational Rights and Privacy Act ("FERPA"), and alleging a claim under 42 U.S.C. § 1983.  The plaintiffs seek $250,000 in damages.[1]  The Brookline School District moves to dismiss the plaintiffs' claims.


Standard of Review

In considering a motion to dismiss, the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor."  Ezra Charitable Trust v.

---

[1]Their claim for attorneys' fees was previously stricken.

Tyco Int'l, Ltd., 466 F.3d 1, 5-6 (1st Cir. 2006).  "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).  In addition, the court will "disregard bald assertions, unsupportable conclusions, and opprobrious epithets." Ezra Charitable Trust, 466 F.3d at 6.  "'A complaint should not be dismissed unless it is apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  Stanton v. Metro Corp., 438 F.3d 119, 123-24 (1st Cir. 2006) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (other quotation marks omitted).

## Background

Catherine Burke and Mikael Rolfhamre lived within the Brookline School District from 1998 until August of 2005.  They adopted three sisters, Kasey, Sasha, and Ilona, from a Russian orphanage in 1998.  The plaintiffs allege that the girls were identified as students in need of special education under the IDEA, as individuals with disabilities under the ADA, and as handicapped persons under Section 504 of the Rehabilitation Act.

The plaintiffs' pro se complaint does not provide a clear chronological description of the events that led to their claims. It appears that the plaintiffs' problems with the special education program in the Brookline School District began in 2003. The plaintiffs state that they met with members of the Brookline school board, starting in 2003, to report the problems they were experiencing with the special education program.  They contend that school board members acknowledged problems but failed to take any action.

The plaintiffs allege that Kasey and Sasha attended Mont Blanc Academy for the 2003-2004 school year.  The Academy is a small private school located in Hooksett, New Hampshire.  It is not approved for special education by the New Hampshire Department of Education.  They also allege that they sought an evaluation of Kasey in 2003 and then were embroiled in a disagreement with the District about who would serve as the evaluator and how the evaluation would be conducted.

They state that they filed a Section 504 grievance on September 15, 2003, and requested a due process hearing in October of 2003.  They contend that the hearing was not provided until September of 2004, after the "Office for Civil Rights" intervened in the matter.  The plaintiffs assert that the hearing officer was not impartial and that the District interfered with

the investigation of their complaint by failing to make complete records available and by providing incorrect and misleading information to the investigator.  The plaintiffs do not state what decision was reached by the hearing officer.[2]

They allege that the District did not obtain their consent to continue Sasha's placement at Mont Blanc Academy for the 2003-2004 year.  They also allege that the District did not obtain their consent to provide special education services to Sasha and Kasey and did not include the plaintiffs in developing an Individual Education Plan ("IEP") for Sasha and Kasey.  They criticize the qualifications of the person the District hired to provide services to their daughters for the 2004-2005 school year.  They also criticize the District's handling of their daughters' school records and contend that the District failed to make the records available to them.

The plaintiffs state that the District requested a hearing in June of 2004 to approve Kasey's placement at "CSDA," which is the District's "upper elementary school."  Compl. at 18.  They allege that the hearing officer issued a decision in August of 2004 which ordered that Kasey be home schooled.  The plaintiffs state that the hearing officer's decision was not appealed.  They

---

[2]It is not clear whether the hearing in the fall of 2004 was resolved by the November 2004 settlement agreement.

allege that the District failed to provide for Kasey's education and intimidated them by telling them that keeping Kasey at home violated New Hampshire's compulsory education laws.  As a result, the plaintiffs enrolled Kasey at CSDA in September of 2004 to avoid truancy charges.

The plaintiffs sought an independent evaluation of Kasey in the fall of 2004.  They allege that the District did not approve the independent evaluator the parents had chosen.  They signed a settlement agreement on the evaluation issue on November 5, 2004, which they allege approved their independent evaluator but imposed conditions on them.  They claim that they were coerced into signing the settlement agreement because they believed the District had passed a new policy that would have allowed the District to exclude the plaintiffs' evaluator absent the agreement.  They contend that they learned after signing the agreement that the District's policy was different than they had understood it to be, and they contend that the District deliberately misled them.

The plaintiffs refer to a New Hampshire Department of Education hearing in May of 2005 as a placement hearing for Kasey.  They state that they were seeking reimbursement for placing Kasey at a private school when the District failed to provide her with a free and appropriate public education as

5

required by the IDEA.  They contend that the District interfered with the hearing by misrepresenting the record, providing false testimony, and giving incorrect information about the programming that had been provided to Kasey.  The plaintiffs also contend that the District attempted to show that they were uncooperative by falsely claiming that the plaintiffs were seeking a residential placement for Kasey and by falsely stating that the plaintiffs had not objected to the District's evaluation until the hearing.  The complaint does not indicate what result was achieved through the hearing.

The plaintiffs allege that they were regarded as troublemakers after they filed complaints.  As a result, they assert, special education department staff members "spread false and damaging rumors about [the plaintiffs] to staff at [Mont Blanc Academy] during the 2003-2004 school year and fueled negative attitudes toward [the plaintiffs]."  Compl. at 29.  They also allege that the District sought medical and mental health records to use against the plaintiffs in litigation, enacted an evaluation policy to disqualify the plaintiffs' chosen independent evaluator, conditioned Kasey's IEP in February of 2005 on her mother agreeing to a psychiatric evaluation, and provided their children with inferior treatment that was not in compliance with state standards.

Discussion

The plaintiffs do not state separate claims in their complaint.  Instead, they cite Section 504 of the Rehabilitation Act, the ADA, the IDEA, the FERPA, and § 1983 as the law that is applicable to their claims.  In a section titled "Factual Allegations," the plaintiffs allege that the District disregarded Section 504, ADA, and IDEA regulations; violated the plaintiffs' asserted rights under the IDEA and Section 504; and retaliated against the plaintiffs for filing grievances and complaints.  The District interprets the plaintiffs' complaint as alleging violations of the ADA, Section 504, FERPA, and § 1983 that are all based on the IDEA and moves to dismiss.  The plaintiffs object to the motion to dismiss.

A.   IDEA and FERPA

Money damages are not available in a suit brought under the IDEA.  Dias-Fonseca v. Puerto Rico, 451 F.3d 13, 28 (1st Cir. 2006).  In addition, the FERPA does not provide either a private cause of action or rights that are actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 276, 280 (2002).  Therefore, to the extent the plaintiffs alleged claims under the IDEA or the FERPA, those claims are dismissed.

In their objection, the plaintiffs do not address the FERPA

and contend that they are not alleging a claim under IDEA. Instead, they assert, their claims are "that because of their advocacy on behalf of their children, the District engaged in retaliation, coercion, intimidation and interference; activities which are prohibited by the ADA (42 U.S.C. § 12203)" and "that the District as a matter of policy and practice failed to carry out the requirements of Section 504 that pertain to parents' rights."  Obj. Mem. at 3.  Based on their statements in their objection, the plaintiffs claim retaliation in violation of the ADA, 42 U.S.C. § 12203, and violation of the procedural requirements of Section 504 of the Rehabilitation Act.

B.  ADA Claim

The ADA provides:  "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  The ADA also prohibits coercion, intimidation, threatening, and interference of any individual "on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."  § 12203(b).  The IDEA affords an

8

opportunity to parents to file complaints for retaliation or coercion that are related to "the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to such child." Weber v. Cranston Sch. Comm., 212 F.3d 41, 51 (1st Cir. 2000).

General compensatory damages are not available in an IDEA-based suit. Dias-Fonseca, 451 F.3d at 28-31. "[W]here the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983-or any other federal statute for that matter-in an attempt to evade the limited remedial structure of the IDEA." Id. at 29. Claims are based on the IDEA when they depend "on the rights created by statute in the IDEA" and are not independent claims under a different federal statute. Id.

In this case, the plaintiffs allege that they were coerced into signing a settlement agreement to resolve their dispute with the District about an independent evaluation of their daughter, Kasey. They allege that the District interfered with their access to grievance procedures to address their dispute with the District about Kasey's evaluation. The plaintiffs' retaliation claim alleges that District personnel retaliated against them because of the plaintiffs' complaints and disputes about the educational services provided to their children. The plaintiffs contend that District staff members fueled negative attitudes

toward them among the staff at Mont Blanc Academy, demanded access to medical and mental health records to be used in litigation of the parents' complaints, changed the evaluation policy to exclude the plaintiffs' chosen independent evaluator, conditioned Kasey's IEP on her mother's consent to a psychiatric evaluation, and provided inferior services and treatment that did not comply with the IDEA.

The plaintiffs' claims alleged under § 12203 are closely related to the identification, evaluation, and educational placement of their children for purposes of achieving a free and appropriate public education.  See Weber, 212 F.3d at 51.  In fact, the plaintiffs state in their objection that the IDEA violations they allege are "examples of specific instances of how the District carried the retaliation, coercion, intimidation, interference and deprivation of rights which are the basis of [their] claim."  Obj. Mem. at 3.  As such, they do not allege an independent claim under the ADA but instead allege an IDEA-based claim in the guise of the ADA.  Therefore, the ADA claim seeking general compensatory damages must be dismissed.[3]  See Diaz-Fonseca, 451 F.3d at 29.

---

[3]In addition, an ADA claim is subject to administrative exhaustion, which does not appear to have occurred in this case. See Hess v. Rochester Sch. Dist., 396 F. Supp. 2d 65, 72 (D.N.H. 2005).

C.  Section 504 of the Rehabilitation Act Claim

Both Section 504 of the Rehabilitation Act and the IDEA require states to provide disabled students with a free and appropriate public education.  See Mo. Dep't of Elementary & Secondary Educ. v. Springfield R-12, 358 F.3d 992, 998-99 (8th Cir. 2004).  The regulations promulgated under Section 504, cited by the plaintiffs, 34 C.F.R. §§ 104.32, 104.25, and 104.36, require school districts to locate qualified handicapped persons and notify their parents of the district's obligation to provide a free and appropriate public education, to conduct evaluations and make placement decisions in accord with certain procedures, and to implement procedural safeguards that can be satisfied by compliance with IDEA requirements.  "The IDEA establishes an elaborate scheme of identifying individuals with disabilities and ensuring that the responsible school authorities develop, in consultation with parents and students, an educational program for the student that accounts for and addresses that student's needs."  Weber v. Cranston Pub. Sch. Comm., 245 F. Supp. 2d 401, 405 (D.R.I. 2003).

The Section 504 regulations the plaintiffs cite in support of their claim provide the same requirements and procedures for ensuring a free and appropriate public education that are required under the IDEA.  Therefore, the Rehabilitation Act does

not provide a separate and independent cause of action for the plaintiffs' claim based upon the cited regulations.  See Diaz-Fonseca, 451 F.3d at 29.  The plaintiffs' Rehabilitation Act claim is dismissed.

D.   § 1983 Claim

42 U.S.C. § 1983 provides a cause of action to persons who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  The plaintiffs cite § 1983 but do not provide any further explanation of that claim in their complaint, and they ignore § 1983 in their objection to the motion to dismiss.  As is stated above, plaintiffs may not invoke § 1983 to bring claims for compensatory damages that are in essence IDEA claims.  Diaz-Fonseca, 451 F.3d at 28-31.  In addition, no claim may be brought under § 1983 based on an alleged violation of the FERPA. Gonzaga, 536 U.S. at 280.  Therefore, to the extent the plaintiffs intended to bring a claim under § 1983 based on alleged violations of the ADA, the IDEA, Section 504 of the Rehabilitation Act, or FERPA, as alleged in this case, that claim is dismissed.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion to dismiss (document no. 8) is granted. All of the plaintiffs' claims are dismissed for failure to state a claim upon which relief may be granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　/s/ Joseph A. DiClerico, Jr.
　　　　　　　　　　　　　　　　Joseph A. DiClerico, Jr.
　　　　　　　　　　　　　　　　United States District Judge

January 29, 2007

cc:　Catherine E. Burke, pro se
　　　Dean B. Eggert, Esquire
　　　Mikael Rolfhamre, pro se